# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

_____

|  |  |  |
|---|---|---|
| **COMPUCREDIT CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:08-cv-430-GMS** |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____) | | **August 28, 2008** |

## DEFENDANT FDIC'S OPPOSITION TO
## PLAINTIFF'S MOTION TO CONSOLIDATE

Daniel H. Kurtenbach (DC Bar No. 426590)
Ashley Doherty (DC Bar No. 336073)
Thomas L. Holzman (DC Bar No. 950162)
Martha W. McClellan (VA Bar No. 17255)
Federal Deposit Insurance Corporation
Legal Division, Corporate Litigation Unit
3501 N. Fairfax Drive, VS-D7022
Arlington, VA 22226
Telephone (703) 562-2465
Facsimile (703) 562-2475
dkurtenbach@fdic.gov
adoherty@fdic.gov
thholzman@fdic.gov
mmcclellan@fdic.gov
*Attorneys for Defendant*
*Federal Deposit Insurance Corporation*

OF COUNSEL
Charles L. Cope (DC Bar No. 70672)
Senior Counsel

Erik Haas
Karla G. Sanchez
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

# TABLE OF CONTENTS

Nature and Stage of the Proceedings                                              1

Summary of the Argument                                                          2

Statement of Facts                                                               3

Argument                                                                         4

1.     The Two Plaintiffs Have Vastly Different Legal Interests.        4

2.     The Two Lawsuits Have Taken Divergent Substantive And
Procedural Paths From The Beginning.                                             5

3.     Consolidation At This Time, With The Cases In Their Present
Procedural Postures, Would Be A Waste Of Judicial Resources
And Simply Create Confusion.                                                     6

Conclusion                                                                       8

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707 *3 (D. Del. 2007)    7

*Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*,
   173 F.3d 909, 912 (3d Cir. 1999)    8

*Johnson v. Manhattan R. Co*., 289 U.S. 479, 496-97 (1933)    8

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
   775 F. Supp. 759, 761 (D. Del. 1991)    8


**Federal Statutes**

12 U.S.C. § 1818(c)    1, 3

12 U.S.C. § 1818(c)(1)    4

12 U.S.C. § 1818(c)(2)    1, 4


**Federal Rules**

Fed. R. Civ. P. 42(a)    7

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

_____

COMPUCREDIT CORPORATION,          )
                                  )
Plaintiff,                        )
                                  )
v.                                )          1:08-cv-430-GMS
                                  )
FEDERAL DEPOSIT INSURANCE         )
CORPORATION,                      )
                                  )
Defendant.                        )
_____)             August 28, 2008

## DEFENDANT FDIC'S OPPOSITION TO
## PLAINTIFF'S MOTION TO CONSOLIDATE

### Nature and Stage of the Proceedings

On July 3, 2008, in conjunction with an administrative proceeding that it previously initiated, defendant Federal Deposit Insurance Corporation (FDIC) served First Bank of Delaware (Bank) with a Temporary Order to Cease Desist (Temporary Order), together with Findings of Fact and Conclusions of Law (Findings),[1] pursuant to 12 U.S.C. § 1818(c).  The Temporary Order prohibits the Bank from acquiring any portfolios of consumer credit card accounts until the Bank submits appropriate operating and capital plans that address and mitigate the risks of its subprime credit card lending programs.  Temporary Order at 2-3.

CompuCredit Corporation (CompuCredit) and the Bank are parties to a transaction that was halted by the Temporary Order.  (Complaint, D.I. 1 at 3, ¶ 14.)  On July 11, 2008, CompuCredit brought this action against the FDIC pursuant to 12 U.S.C. § 1818(c)(2), seeking "injunctive relief . . . including an injunction barring the FDIC from enforcing the [Temporary]

---

[1] Temporary Order to Cease and Desist, In the Matter of First Bank of Delaware, No. FDIC-08-151c & b, FDIC-07-256b (July 3, 2008) (attached as Exhibit A to this Opposition); Findings of Fact and Conclusions of Law, In the Matter of First Bank of Delaware, No. FDIC-08-151c&b, No. FDIC-07-256b (July 3, 2008) (attached as Exhibit B to this Opposition).

Order." Complaint, D.I. 1 at 5. On the same day, the Bank brought an action seeking similar relief. *First Bank of Delaware v. FDIC*, No. 1:08-cv-429-GMS (D. Del.) (*FBD v. FDIC*).

Shortly after filing its complaint, CompuCredit filed a motion for a preliminary injunction. D.I. 5.[2] On July 23, 2008, the FDIC filed a motion to dismiss this lawsuit for lack of subject matter jurisdiction, specifically challenging CompuCredit's standing to bring this lawsuit. D.I. 8. That motion to dismiss is now fully briefed. The FDIC also filed a motion to stay all other proceedings in this case pending resolution of the motion to dismiss. D.I. 8. The motion to stay is also fully briefed.

On August 11, 2008, CompuCredit moved to consolidate this lawsuit with the lawsuit filed by the Bank, *FBD v. FDIC*. On August 13, 2008, the Bank filed its own motion to consolidate the two lawsuits. *FBD v. FDIC*, D.I. 14. The FDIC now files this opposition to CompuCredit's Motion to Consolidate.

## Summary of the Argument

In accordance with the FDIC's Motion to Dismiss (D.I. 8), which is fully briefed, the FDIC believes that this action should be dismissed for lack of jurisdiction, and that therefore CompuCredit's Motion to Consolidate is ultimately moot. Pending disposition of the Motion to Dismiss, the FDIC opposes consolidation on the following grounds:

1. The two plaintiffs, CompuCredit and the Bank, have vastly different legal interests.

2. The two lawsuits have taken divergent substantive and procedural paths from the beginning.

3. Consolidation at this time, with the cases in their present procedural postures, would be a waste of judicial resources and simply create confusion.

---

[2] On August 18, 2008, the Court granted the FDIC's motion for an enlargement of time for filing the Opposition to the motion for preliminary injunction, pending resolution of the FDIC's motion to dismiss.

## Statement of Facts

CompuCredit is a contractor for the Bank (D.I. 1 at ¶ 10), and markets credit cards throughout the United States on behalf of the Bank (Findings at ¶¶ 9-10).  The Bank issues and owns the credit cards, while CompuCredit services the accounts on behalf of the Bank, purchases the credit card receivables from the Bank, and pays the Bank a monthly fee based on the number of account statements processed.  Findings at ¶ 9.  CompuCredit has similar agreements with other banks.  Findings at ¶¶ 10-11.

On or about May 15, 2008, CompuCredit demanded that another institution transfer more than 390,000 credit card accounts to the Bank.  The Bank intended to increase its credit card account portfolio by acquiring those additional accounts.  Findings at ¶¶ 30, 35.  The FDIC subsequently determined that:

> Given the inadequacies of the Bank's management and supervision of the Bank's third-party subprime credit lending policies and practices, the Bank should not be permitted to acquire any portfolios of credit card accounts unless the conditions specified in the TEMPORARY ORDER are met.
>
> \*   \*   \*   \*
>
> Given the Bank's failure to assess and account for the risks set forth in the Safety and Soundness Guidelines, the Bank should not be permitted to acquire any additional portfolios of credit card accounts unless the conditions specified in the TEMPORARY ORDER are met.
>
> \*   \*   \*   \*
>
> The FDIC is further of the opinion that unless the Bank is restrained by the issuance of the TEMPORARY ORDER, such practices and violations, or their continuation, are likely to cause a significant dissipation of the Bank's assets or earnings, or are likely to weaken the condition of the Bank, or otherwise prejudice the interests of the Bank's depositors . . . .
>
> WHEREFORE, the FDIC finds that, for the protection of the Bank and the interests of its depositors, it shall issue the TEMPORARY ORDER pursuant to section 8(c) of the Act, 12 U.S.C. § 1818(c), against the Bank.

Findings at 8-9. The Findings do not call for CompuCredit to be included in the Temporary Order. The Temporary Order itself names only the Bank in the caption and requires only the Bank to take specific actions or refrain from taking specific actions. Temporary Order at ¶ 1.

On July 11, 2008, the Bank and CompuCredit filed separate lawsuits against the FDIC. D.I. 1; *FBD v. FDIC*, D.I. 1.

**Argument**

**1.    The Two Plaintiffs Have Vastly Different Legal Interests.**

Even though both lawsuits challenge the same Temporary Order, the Complaints in the two separate lawsuits are very different, for one simple reason: The Temporary Order is directed to the Bank, not to CompuCredit. CompuCredit is neither directed to take any action nor to refrain from taking any action.

Thus, while it appears that the Bank and CompuCredit are cooperating in their litigation efforts (for example, the motions to consolidate filed in the separate actions are very similar), their legal relationships to the Temporary Order and its obligations are different, and separate.

The FDIC, as the Bank's federal regulator, has told the Bank specifically what it must do under 12 U.S.C. § 1818(c)(1). What the FDIC has directed the Bank to do is to submit an appropriate operating and capital plan, which assesses the risks to the Bank of its credit card programs, addresses the unsafe or unsound practices of the Bank, and mitigates the risks identified by the Bank. In its lawsuit, *FBD v. FDIC*, the Bank is challenging the FDIC's order, as it has a right to do under 12 U.S.C. § 1818(c)(2).

In contrast, the Temporary Order does *not* specify anything that CompuCredit is required to do or to refrain from doing. CompuCredit is not required to submit a plan, as the Bank is, nor is CompuCredit required or allowed to participate in the preparation of Bank's plan.

CompuCredit has no more right to jump into the fray than any of the other credit card companies with which the Bank has similar relationships.

In any event, CompuCredit disputes that the FDIC has authority to tell it to do anything because CompuCredit states that it is not an "institution-affiliated party" subject to FDIC regulation. D.I. at ¶ 10. In fact, CompuCredit does not even believe that it had to file this action: "[CompuCredit] files this action only out of an abundance of caution, to preserve its rights to seek interim relief against the Order, given its vague nature." D.I. 1 at ¶ 10. The FDIC agrees that the Temporary Order does not apply to CompuCredit. Mot. to Dismiss, D.I. 8 at 2. Both parties agree that there is no basis for this lawsuit.

CompuCredit is wasting the resources of the Court and counsel in pursuing this action. Given this contrived untidiness, the best and most efficient use of judicial resources would be to deny the motions for consolidation, and dismiss CompuCredit's lawsuit.

**2.      The Two Lawsuits Have Taken Divergent Substantive And Procedural Paths From The Beginning.**

In the time since the two cases were originally filed -- separately and independently -- they have followed different paths and are now in very different procedural postures.

In this case, after the Complaint was filed, the FDIC filed its Motion to Dismiss, together with a Motion to Stay all other proceedings in this case pending resolution of the Motion to Dismiss. D.I. 8. Those Motions are now fully briefed and ripe for decision. CompuCredit filed a Motion for a Preliminary Injunction (D.I. 5), but the Court has ordered the opposition to that motion be postponed until the Motion to Dismiss has been resolved. In short, this case is now focused on the FDIC's Motion to Dismiss.

In contrast, proceedings in *FBD v. FDIC* have been directed toward resolution of the substantive issues in that case. The Bank filed its Motion for Preliminary Injunction on July 14,

2008 (*FBD v. FDIC*, D.I. 4).  The FDIC responded to that motion on August 4, 2008 (*FBD v. FDIC*, D.I. 13), and the Bank filed its Reply on August 14, 2008 (*FBD v. FDIC*, D.I. 15).  The Court's decision on the Bank's Motion for Preliminary injunction will determine the future procedural and substantive course of that case.

Considering the different interests of the two plaintiffs, their different Complaints, and the fact that *FBD v. FDIC* is addressing substantive issues while this case is addressing jurisdictional issues, it seems unlikely that the two matters will ever reach a point where it will be efficient and economical to administer them as one case.  Following resolution of the FDIC's motion to dismiss CompuCredit, and resolution of the two separate motions for preliminary injunction, a time may come when it would be appropriate for consolidation to be revisited by the Court.  For now, consolidation should be denied.

**3.      Consolidation At This Time, With The Cases In Their Present Procedural Postures, Would Be A Waste Of Judicial Resources And Simply Create Confusion.**

The Bank and CompuCredit filed two separate actions.  At that time, judicial resources were invested in setting up two cases.  As discussed above, those two separate cases have proceeded along smoothly on two separate tracks.  As a practical matter, considering the divergent procedural paths the cases have taken, keeping them separate has been, and will continue to be, administratively efficient.

Consolidating the cases now, with significant substantive motions that each relate to only one of the plaintiffs, and other pending procedural motions, would create an administrative muddle for the Clerk's office, the Court, and counsel.  Identifying which response related to which motion, identifying which arguments related to which parties, even simply putting titles on motions, would be an exercise in utter confusion.  Clearly, interests of efficiency and economy cannot be served by this administrative change of course.

Interestingly, now that the cases are proceeding toward separate significant rulings, the Bank and CompuCredit want to muddy the water by pushing both cases together. Plaintiffs' motions to consolidate are surprising enough considering that CompuCredit believes it should not even be in Court. But what is even more surprising is that although both CompuCredit and the Bank contend that Court *can* consolidate the two cases, neither plaintiff has a word to say about why the Court *should* consolidate the cases. That is, beyond rote and unsupported speculation about "a significant saving of judicial time and effort" (Mot. to Consolidate, D.I. 13 at 4), CompuCredit and the Bank say nothing at all about why consolidation is a good idea; why their original election to file two separate cases was a bad idea; what has changed since the cases were filed; how consolidation will help bring clarity to the substantive legal and factual issues; why consolidation would enhance the fairness of the proceedings; or why consolidation matters. Without such an explanation, these motions to consolidate are themselves a waste of judicial resources.

Consolidation is discretionary with the Court. Fed. R. Civ. P. 42(a) ("the court *may*") (emphasis added); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707 *3 (D. Del. 2007) ("Decisions to consolidate are discretionary, but often courts balance considerations of efficiency, expenses, and fairness"). As this Court has stated:

> The mere existence of common issues, a prerequisite to consolidation, does not *require* consolidation. The savings of time and effort gained through consolidation must be balanced against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions. The proper administration of justice requires that issues be resolved without unnecessary cost or delay.

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991) (emphasis added) (internal citations omitted).

As these cases currently stand, the goal of "simultaneous disposition of the separate actions" on the same legal or factual grounds is nowhere on the horizon.  As a result, consolidation would do nothing more than add confusion and inconvenience, without advancing the cases toward a savings of time or effort.  The Supreme Court has stated:

> [C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.

*Johnson v. Manhattan R. Co.,* 289 U.S. 479, 496-97 (1933); *Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir. 1999).  In other words, consolidation is a means to *improve the process* of resolving matters before the Court. CompuCredit fails to demonstrate how the process of resolving these two cases will be improved by consolidating them.

## Conclusion

For the foregoing reasons, plaintiff's motion to consolidate should be denied.

8

Respectfully submitted this 28th day of August, 2008,

/s/        Daniel H. Kurtenbach
Daniel H. Kurtenbach (DC Bar No. 426590)
Ashley Doherty (DC Bar No. 336073)
Thomas L. Holzman (DC Bar No. 950162)
Martha W. McClellan (VA Bar No. 17255)
Federal Deposit Insurance Corporation
Legal Division, Corporate Litigation Unit
3501 N. Fairfax Drive, VS-D7022
Arlington, VA 22226
Telephone (703) 562-2465
Facsimile (703) 562-2475
dkurtenbach@fdic.gov
adoherty@fdic.gov
thholzman@fdic.gov
mmcclellan@fdic.gov
*Attorneys for Defendant*
*Federal Deposit Insurance Corporation*

OF COUNSEL
Charles L. Cope (DC Bar No. 70672)
Senior Counsel

Erik Haas
Karla G. Sanchez
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

# EXHIBIT A

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | | |
|---|---|---|
| In the Matter of | ) | TEMPORARY ORDER TO |
| | ) | CEASE AND DESIST |
| FIRST BANK OF DELAWARE | ) | |
| WILMINGTON, DELAWARE | ) | FDIC-08-151c&b |
| | ) | FDIC-07-256b |
| | ) | |
| (Insured State Nonmember Bank) | ) | |

The Federal Deposit Insurance Corporation (FDIC) has determined that the unsafe or

unsound banking practices involving subprime lending that the First Bank of Delaware,

Wilmington, Delaware (Bank), is alleged to have engaged in or that the FDIC has reason to believe

the Bank is about to engage in, as specified in the NOTICE OF CHARGES FOR AN ORDER TO

CEASE AND DESIST AND FOR RESTITUTION; ORDER TO PAY; AND NOTICE OF

HEARING (collectively, NOTICE), issued on June 10, 2008, attached hereto and incorporated

herein by reference, and/or the continuation thereof by the Bank, are likely to cause insolvency or

significant dissipation of the assets or earnings of the Bank, or are likely to weaken the condition of

the Bank or otherwise prejudice the interests of the depositors of the Bank prior to the completion of

the proceedings against the Bank conducted pursuant to section 8(b) of the Federal Deposit

Insurance Act (Act), 12 U.S.C. § 1818(b).

In particular, the FDIC has determined that the Bank's imminent intention to acquire one or

more portfolios of credit card accounts, given the unsafe and unsound practices evidenced in its

subprime lending, including ineffective oversight of third-party vendors, is likely to weaken the

condition of the Bank.

Therefore, the FDIC hereby issues this TEMPORARY ORDER TO CEASE AND DESIST

(TEMPORARY ORDER) and hereby gives notice pursuant to section 8(c)(1) of the Act, 12 U.S.C.

§1818(c)(1), that the Bank and its institution-affiliated parties, successors and assigns, be and

hereby are ORDERED to cease and desist from and take affirmative action as follows:

1.      The Bank shall not acquire any portfolios of consumer credit card accounts from

Columbus Bank and Trust Company, Columbus, Georgia; CompuCredit Corporation, Atlanta,

Georgia, or any other insured depository institution or other entity until such time as:

(a)  the Bank submits to the Regional Director of the FDIC's New York Regional

Office (Regional Director) for non-objection, an operating and capital plan that:

(i) assesses all risks associated with the credit card accounts to be acquired;

(ii) addresses the unsafe or unsound banking practices involving subprime

lending that the Bank is alleged to have engaged in as specified in the Notice,

including but not limited to, ineffective oversight by the Bank's board of

directors and the lack of adequate supervision by the Bank's senior

management, inadequate Bank policies and procedures, inadequate internal

controls and audit system, inadequate and inappropriately trained number of

staff, inadequate management information system, and an inadequate

compliance management system, as more fully set forth in paragraphs 114 –

122 of the NOTICE;

(iii) mitigates all risks identified by the plan, including but not limited to,

funding risk, by identifying satisfactory sources of additional capital to meet

the Bank's current and future needs resulting from the subprime credit card

accounts to be acquired, and the sources of said capital, including a

contingency plan that identifies alternative sources should the primary

sources of capital be unavailable;

(iv) complies with the *Interagency Expanded Guidance for Subprime*

*Lending Programs*, FIL-9-2001 (January 31, 2001); and

(b)  the Regional Director has provided the Bank with written notice of her non-

objection to such plan.

This TEMPORARY ORDER shall be effective immediately upon service on the Bank and

shall remain in full force and effect, pending the completion of the administrative proceedings

instituted pursuant to the foregoing NOTICE.


Pursuant to delegated authority.

Dated this 3rd day of July 2008.

Christopher J. Spoth
Senior Deputy Director
Division of Supervision and Consumer Protection

# EXHIBIT B

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | | |
|---|---|---|
| | ) | |
| In the Matter of | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| FIRST BANK OF DELAWARE | ) | |
| WILMINGTON, DELAWARE | ) | FDIC-08-151c&b |
| (Insured State Nonmember Bank) | ) | FDIC-07-256b |
| | ) | |

The Federal Deposit Insurance Corporation (FDIC), has considered whether to issue a

TEMPORARY ORDER TO CEASE AND DESIST (TEMPORARY ORDER), pursuant to

section 8(c) of the Federal Deposit Insurance Act (Act), 12 U.S.C. §1818(c), in conjunction with

the issuance of a NOTICE OF CHARGES FOR AN ORDER TO CEASE AND DESIST AND

FOR RESTITUTION; ORDER TO PAY; AND NOTICE OF HEARING (collectively,

NOTICE), pursuant to section 8(b)(1) of the Act, 12 U.S.C. §1818(b)(1), against First Bank of

Delaware, Wilmington, Delaware (Bank).

Based upon information provided by the Bank and/or discovered through a currently

ongoing FDIC examination, FDIC examinations conducted April 25, 2007 and April 6, 2006,

and other information, the FDIC makes the following FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

### Jurisdiction and Background

1.     The Bank is a corporation organized, existing, and doing business under the laws

of the State of Delaware with its principal place of business in Wilmington, Delaware.

2.     The Bank is, and at all times relevant to this proceeding has been, a "State

nonmember bank" within the meaning of section 3(e)(2) of the Act, 12 U.S.C. § 1813(e)(2); an

"insured depository institution" within the meaning of section 3(c)(2) of the Act, 12 U.S.C. §

1

1813(c)(2); and subject to the Act, 12 U.S.C. §§ 1811-1831aa, the FDIC's Rules and
Regulations, 12 C.F.R. Chapter III, and the laws of the State of Delaware.

      3.     The FDIC is the "appropriate Federal banking agency", as that term is defined in
section 3(q)(3) of the Act, 12 U.S.C. § 1813(q)(3), with respect to the Bank, and has jurisdiction
over the Bank and the subject matter of this proceeding.

      4.     CompuCredit Corporation (CompuCredit) is a corporation organized, existing,
and doing business under the laws of the State of Georgia, and has its principal place of business
in Atlanta, Georgia.

      5.     Since at least 2005, the Bank has, through its National Consumer Products
Division (NCP Division), engaged in lending programs offered, marketed, administered,
processed, serviced and/or collected by CompuCredit and other third parties pursuant to
arrangements or agreements with the Bank.

      6.     The FDIC examination of the Bank conducted April 25, 2007, determined that the
NCP Division's third-party lending programs include, among other things, four third-party
providers offering installment loan programs (ILPs), two third-party providers offering subprime
credit cards, a third-party provider offering an affinity credit card for financing dental
expenditures, a third-party provider offering an affinity credit card predicated on advancing a
percent of the enrolled employee's annual wages, two third-party providers offering life
insurance premium products, and five third-party providers offering stored value cards.

### Subprime Credit Card Lending

      7.     Since at least February 2005, pursuant to a contractual arrangement, the Bank and
CompuCredit have engaged in credit card lending activities throughout the United States targeted
at, among others, consumers who have inadequate or poor credit histories and, consequently,
have limited credit options (hereinafter, subprime credit card lending).

8.    Beginning February 16, 2005, the Bank and CompuCredit first entered into an agreement providing for, among other things, the marketing and issuance of credit cards. Subsequently, the agreement was amended and/or restated (collectively hereinafter, CompuCredit Affinity Agreements).

9.    Pursuant to the CompuCredit Affinity Agreements, the Bank issues the credit cards and owns the credit card accounts. CompuCredit markets the credit cards and services the accounts on behalf of the Bank. CompuCredit also purchases the credit card receivables from the Bank on a daily basis, and pays the Bank a monthly fee based upon the number of account statements processed.

10.    Since at least 2005, the Bank and CompuCredit have marketed credit cards throughout the United States under certain brand names including Tribute MasterCard, Imagine MasterCard, Purpose Advantage Credit Card and the Embrace Visa Card (collectively, CompuCredit Cards). The Tribute and Imagine MasterCards are referred to internally by the Bank and CompuCredit as the Little Rock cards (Little Rock Cards).

11.    CompuCredit also issues the Little Rock Cards through other FDIC supervised insured depository institutions, including Columbus Bank and Trust Company, Columbus, Georgia (CBT). CompuCredit has an affinity agreement with CBT that is similar to the affinity agreement with the Bank.

12.    In addition to subprime credit card products offered through CompuCredit, the Bank offers, among other financial products, additional credit card products through the arrangments listed in paragraph 6 and otherwise.

13.    As of March 31, 2007, the aggregate dollar volume of the NCP Division's outstanding loans were $287.8 million, ten times the Bank's capital. As of December 31, 2007, the aggregate dollar volume had increased to $748.5 million. As of March 31, 2008, the

aggregate dollar volume was $682 million.

14.    The most recent FDIC examination of the Bank commenced on June 23, 2008 (hereinafter, current FDIC examination).

15.    As of March 31, 2008:

      (a)    the Bank's total deposits equal $ 76 million;

      (b)    the Bank's "Tier 1 or Core Capital", as defined in section 325.2(v) of the Rules (Tier 1 capital), equals $36 million;

16.    As of May 31, 2008, CompuCredit has a reserve account at the Bank in the amount of $12,000,000 to cover contingency funding of consumer credit card receivables associated with the CompuCredit Cards, in the event CompuCredit fails to purchase and fund the credit card receivables.

17.    Prior to May 31, 2008, CompuCredit had a $2,000,000 reserve account at the Bank and provided the Bank a letter of credit to cover contingency funding of consumer credit card receivables associated with the CompuCredit Cards, in the event CompuCredit failed to purchase and fund the credit card receivables.  The letter of credit expired on May 31, 2008 and was replaced with a cash reserve specified in paragraph 16 above.

### Unsafe or Unsound Practices

18.    Section 39 of the Act, 12 U.S.C. §1831p-1, requires the Federal banking agencies to establish certain safety and soundness standards for all insured depository institutions.  Section 39(a) of the Act requires the FDIC to establish operational and managerial standards for its banks.

19.    The Interagency Guidelines Establishing Standards for Safety and Soundness, set forth at Appendix A to Part 364 of the FDIC's Rules and Regulations, 12 C.F.R. §364, Appendix A (Safety and Soundness Guidelines), were established under Section 39(a) of the Act to provide

guidance on safe and sound operational and managerial standards including, internal controls and information systems, internal audit systems, loan documentation, credit underwriting, asset growth, and asset quality.

20.    The Bank has failed to comply with the Safety and Soundness Guidelines and has failed to operate in a safe and sound manner, as detailed below, demonstrated principally by the Bank's continuing failure to adequately oversee and monitor its third-party lending programs.

21.    FDIC compliance examiners previously examined the Bank and issued a Compliance Report and Community Reinvestment Act Performance Evaluation as of April 6, 2006 (Compliance Report).  FDIC risk management examiners also examined the Bank and issued the April 25, 2007 Report of Examination (ROE) utilizing financial information as of March 31, 2007.  Both the Compliance Report and ROE cited the Bank for numerous unsafe or unsound banking practices and violations of law with respect to the Bank's third-party lending programs.

22.    The Bank is engaging in unsafe and unsound banking practices in that the Bank has been operating its NCP Division without effective oversight by the Bank's board of directors (Board) and without adequate supervision by the Bank's senior management of the NCP Division's third-party lending programs and third-party providers it utilizes.  The inadequacies of Board's oversight and senior management's supervision are detailed in the NOTICE, paragraph 118.

23.    The Bank is engaging in unsafe and unsound banking practices in that the Bank has been operating its NCP Division with an inadequate system of internal controls with regard to the size of the NCP Division and the nature, scope and risk of the third-party lending programs and third-party providers in contravention of the Safety and Soundness Guidelines.  The inadequacies of the Bank's internal controls are detailed in the NOTICE, paragraph 119.

24.     The Bank is engaging in unsafe and unsound banking practices in that the Bank has been operating its NCP Division with an inadequate management information system (MIS) with regard to the size of the NCP Division and the nature, scope and risks of third-party lending programs and third-party providers in contravention of the Safety and Soundness Guidelines. The inadequacies of the MIS are detailed in the NOTICE, paragraph 120.

25.     The Bank is engaging in unsafe and unsound banking practices in that the Bank has been operating its NCP Division with an inadequate compliance management system to ensure compliance with all federal consumer protection laws, including, but not limited to section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (Section 5), and all implementing rules and regulations, as well as all applicable policies and procedures of the Bank. The inadequacies of the Bank's compliance management system are detailed in the NOTICE, paragraph 122.

26.     The Bank is engaging in unsafe and/or unsound banking practices by operating without policies, practices, or systems that comply with the policies and guidelines listed in the NOTICE, paragraph 123.

27.     The Bank is continuing to engage in unsafe and/or unsound banking practices enumerated in the Notice and in paragraphs 20-26 above, and remains in substantial nonconformance with the Safety and Soundness Guidelines, especially with respect to the Bank's subprime credit card lending programs.

28.     The *Interagency Expanded Guidance for Subprime Lending Programs*, FIL-9-2001 (Jan. 31, 2001) (Subprime Guidance) states that banks are to recognize the additional risks inherent in subprime lending and to determine if those risks are controllable given the bank's staff, financial condition, size, and level of capital support. The FDIC considers subprime lending to be a high-risk activity that is unsafe or unsound if the risks associated with this

6

activity are not properly managed and controlled. The Bank's subprime credit card lending policies and practices are unsafe and/or unsound in that they fail to properly manage and control risk.

29.     The FDIC's *Guidance for Managing Third-Party Risk*, FIL-44-2008 (June 6, 2008) confirms that banks are responsible for actions taken on their behalf by third parties and that, therefore, banks should assess and address the risks posed by the use of such third parties.

### Proposed Acquisition of Additional Subprime
### Credit Card Accounts Poses Increased Risks

30.     On or about May 15, 2008, CompuCredit issued a demand to CBT, under the terms of its affinity agreement with CBT, to repurchase or transfer certain credit card accounts owned by CBT, but serviced by CompuCredit. CompuCredit subsequently directed CBT to transfer to the Bank 392,283 Little Rock Card accounts with a total outstanding balance due of approximately $219,678,886 and total aggregate available credit of approximately $21,000,000.

31.     On June 9, 2008, the FDIC issued a stipulated Order to Cease and Desist and Order to Pay (C&D Order) and an Order for Restitution against CBT. The C&D Order requires, among other things, compliance with the *Interagency Account Management and Loss Allowance Guidance for Credit Card Lending*, FIL-2-2003 (January 8, 2003) (Account Management Guidance).

32.     CBT filed a civil action against CompuCredit on June 11, 2008 for, among other things, CompuCredit's alleged refusal to comply with the Account Management Guidance.

33.     On June 10, 2008, the FDIC issued the NOTICE and commenced two similar administrative enforcement actions, one against CompuCredit alone (relating to CBT) and the other against another FDIC-supervised institution and CompuCredit. The three NOTICES allege, among other things, that certain subprime credit card products, including those that

7

CompuCredit seeks to transfer from CBT to the Bank, were marketed in violation of Section 5.

34.     The FDIC determined that the Bank intends to acquire approximately 392,283 subprime credit card accounts currently owned by CBT.

35.     The Bank is operating in contravention of the Safety and Soundness Guidelines, Part 364 of the FDIC's Rules and Regulations, 12 C.F.R. §364, Appendix A because the Bank's operational and managerial standards are not consistent with safe and sound banking practices, as evidenced by the numerous unsafe and unsound banking practices and hazardous subprime credit card lending practices cited in the Notice and in paragraphs 21-30 above.

36.     Given the inadequacies of the Bank's management and supervision of the Bank's third-party subprime credit card lending policies and practices, the Bank should not be permitted to acquire any portfolios of credit card accounts unless the conditions specified in the TEMPORARY ORDER are met.

37.     The Bank is also operating in contravention of the Safety and Soundness Guidelines relating to capital risk because the Bank has not assessed or accounted for the financial, operational, compliance, and reputational risks associated with its current credit card portfolio and the effect on those risks posed by acquiring approximately 392,283 subprime credit card accounts.

38.     Given the Bank's failure to assess and account for the risks set forth in the Safety and Soundness Guidelines, the Bank should not be permitted to acquire any additional portfolios of credit card accounts unless the conditions specified in the TEMPORARY ORDER are met.

39.     In sum, the Bank is currently operating in an unsafe and/or unsound manner, without adequate systems and controls, and has failed to assess the risks associated with its currently held subprime credit card accounts. The Bank intends to acquire a large portfolio of additional subprime credit card accounts that are related to the FDIC's assertions of Section 5

8

violations, and has not assessed or accounted for the financial, operational, compliance, and reputational risks these additional accounts pose to the Bank, and does not have adequate oversight systems reasonable calculated to control these risks. Under these circumstances, the Bank should not be permitted to acquire additional portfolios of credit card accounts unless the conditions set forth in the TEMPORARY ORDER are met.

Based upon the foregoing, the FDIC is of the opinion that the Bank has engaged in unsafe or unsound banking practices in conducting the business of the Bank, and that unless restrained the Bank will continue to engage in such practices. The FDIC is further of the opinion that unless the Bank is restrained by the issuance of the TEMPORARY ORDER, such practices and violations, or their continuation, are likely to cause a significant dissipation of the Bank's assets or earnings, or are likely to weaken the condition of the Bank, or otherwise prejudice the interests of the Bank's depositors prior to the completion of the administrative proceedings instituted pursuant to the foregoing NOTICE.

WHEREFORE, the FDIC finds that, for the protection of the Bank and the interests of its depositors, it shall issue the TEMPORARY ORDER pursuant to section 8(c) of the Act, 12 U.S.C. § 1818(c), against the Bank.

Pursuant to delegated authority.

Dated this 3ʳᵈ day of July 2008.

Christopher J. Spoth
Senior Deputy Director
Division of Supervision and Consumer Protection

9